Atkinson, Admrx., Appellant, *v.* Coskey et al.

Argued March 26, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thompson Bradshaw,* with him *Frank E. Reed,* for appellant.

· *Leonard L. Ewing,* with him *Reed & Ewing* and *John D. Ray,* for appellees.

OPINION BY MR. JUSTICE JONES, May 27, 1946:

These appeals are from an order of the court below refusing the plaintiff's motion to remove a compulsory non-suit. As administratrix of her deceased husband's estate, the plaintiff sued for damages for his wrongful death and under the survival statutes. The defendants are the driver and the owner of an automobile with which the decedent came in contact, while he was crossing a public street on foot, as a consequence whereof,

he was knocked to the street where he was then run over by a following automobile owned and driven by the remaining defendant. The injuries inflicted on the pedestrian at once rendered him unconscious and caused his death a day later without his having regained consciousness. The only living witnesses to the accident are the defendants and other passengers of the two automobiles some of whom the plaintiff called at trial. The trial judge entered the non-suit, which the court en banc subsequently refused to take off, on the ground that the plaintiff had failed to prove the defendants negligent and that the evidence showed the decedent to have been guilty of contributory negligence as a matter of law. We think the case was for the jury and that the action of the court below was error.

The evidence adduced in the plaintiff's case discloses the following circumstances attending the accident.

Virginia Avenue in the Borough of Rochester, Pennsylvania, is an improved public thoroughfare, twenty-seven feet wide from curb to curb and running north and south. It is intersected on its westerly side at right angles by Clay Street which is seventeen feet wide and ends at Virginia Avenue. Directly opposite the middle of the Clay Street opening, that is, on the easterly side of Virginia Avenue, there is a one hundred watt street light fastened by a bracket to a pole at some twenty-five feet above the ground.

About one o'clock in the morning of December 3, 1944, the automobile (a five passenger sedan) of the defendant Lamon, driven by the defendant Coskey, was proceeding south on Virginia Avenue toward the Clay Street intersection. Coskey was driving the automobile at the direct request of Lamon who, with a guest, sat on the front seat with the driver while two other guests occupied the back seat. Behind the Lamon automobile and travelling in the same direction was the automobile owned by defendant Rankin which he was driving and in which there were two guests. All of the occupants of

the automobiles were acquainted, being part of a larger group that had spent the evening at a dinner and celebration in honor of the betrothal of one of the group at a road-house some few miles from Rochester where they had gone upon leaving their work at five P.M. The party had broken up about 12:30 A.M. and, after a delay of fifteen to twenty minutes spent in fixing a flat tire, the automobiles above-mentioned departed. While proceeding southward on Virginia Avenue toward the Clay Street intersection in Rochester, the Lamon automobile was on the driver's right-hand side of the street about three feet from the curb and travelling at an estimated rate of speed of twenty-five to thirty-five miles per hour. The Rankin automobile was following the Lamon car at the same rate of speed and at a distance between the two automobiles of twenty-five or forty-four feet as estimated by a passenger in the Rankin car. The night was clear and Virginia Avenue, which is straight for several hundred feet on either side of the Clay Street intersection, was dry except for a little snow along the curbs. There was no other traffic in sight. No automobiles were parked on Virginia Avenue nor was any other obstruction on the highway.

The defendant Lamon testified that "when we approached Clay Street", Coskey swerved the car to the right and Lamon "heard a bump on the [rear left] fender". Another passenger of the Lamon car testified to the "sharp swerving of the car". The driver brought the Lamon automobile to a sudden stop along the right-hand curb of Virginia Avenue with the rear of the automobile "about a foot" beyond the south line of Clay Street. Upon alighting from the Lamon automobile (the Rankin car having stopped nearby), the occupants "went back and there saw the man [Atkinson] laying in the center of the street". Coskey, who was not called as a witness by the plaintiff, had made certain admissions to investigating police officers at the place of the accident shortly afterwards to which the police testified.

Thus, Coskey had told the police that "he didn't see [the pedestrian], but felt him brush the side of the car; and he thought he had run over him—he said he thought he had run over him at the time". Further on, Coskey was quoted as saying that "he was almost on top of [the] man when he saw him . . .". Coskey also stated that "he couldn't see very good; he said his windshield was frosted". None of the other witnesses saw Atkinson before his contact with the Lamon car.

The police found that the left headlight of the Lamon automobile was burned out. Lamon testified that that was so only when the lights were on low beam but that they had been on high beam at the time of the accident, throwing their rays forward three hundred to four hundred feet. He admitted, however, that he had not been "looking out in front, observing the driveway" but had been carrying on a conversation with a passenger in the rear seat. When the police asked Coskey whether the left headlight was out when the accident occurred, "He said he couldn't see very well; he didn't know." There was a justifiable inference from the evidence that the street light at the Clay Street intersection was burning at the time of the accident.

When Rankin, who was driving the second automobile, saw the Lamon car coming to a sudden stop and a man "flopping around in the street ahead of him", he veered his car sharply to the left-hand side of the roadway with the result that the right front and rear wheels of Rankin's car passed over Atkinson's body. The Rankin car came to a stop abreast the Lamon car and then pulled up to the right-hand curb ahead of the Lamon car.

Except for the fact that Atkinson's body after the accident was lying in the middle of Virginia Avenue, as to which all of the witnesses were in agreement, the testimony as to the position of the body with respect to the Clay Street intersection was in hopeless conflict. By estimates, the several witnesses located the body at

six different places varying from extremes of twenty-two feet north of Clay Street to fifteen feet south of Clay Street. But, the defendant Lamon twice gave the location by estimates which placed the body well within the intersection, viz., five feet south of the north line of Clay Street and six feet to eight feet south of the north line of Clay Street.

At the time of the accident Atkinson, who was then thirty-two years old, was "in perfect health" and worked regularly. He was married and the father of three living children and one not yet born. He was the sole support of his wife and children with whom he lived. He was employed as a truck driver by a transfer company, his duties requiring him to work long and irregular hours with trips at times which compelled him to be away from home overnight and longer. Where he was going in traversing Virginia Avenue at the time of the accident or where he had been, the testimony does not disclose.

Viewing the evidence in the light most favorable to the plaintiff as the procedural situation requires (*Stephany v. Equitable Gas Company*, 347 Pa. 110, 111, 31 A. 2d 523), we think the jury would have been justified in finding that the deceased was struck by the Lamon automobile as he was crossing Virginia Avenue at the Clay Street intersection. True enough, the testimony as to the position of the body, after the accident, in its relation to Clay Street was conflicting, but the testimony of Lamon placed it within the intersection only a relatively few feet south of the north line of Clay Street extended. Moreover, the location of the body after the accident could not be deemed to determine conclusively Atkinson's place of crossing at the time he was struck by the Lamon car. In falling to the street as a result of the impact, it is not likely that Atkinson's body was at the exact place where he had been at the moment of the accident. As observed by Rankin from the car following, the body was "flopping around in the street". In any event, it is the presence of an intersection rather

than the precise position of some one within it that determines the care required of approaching drivers in the circumstances: cf. *Willinsky v. Fulton,* 79 Pa. Superior Ct. 144, 147.

The attendant care required of all drivers, particularly of motor vehicles, at crossings is that they be highly vigilant and that they maintain such control that on the shortest possible notice they can stop so as to avoid injury to a pedestrian; see *Virgilio v. L. B. Walker and F. C. Brehm, etc.,* 254 Pa. 241, 245, 98 A. 815. That rule has been applied by our courts many times in cases involving accidents at street intersections.[1] The termination of a street where it intersects another has been held to be an intersection within the meaning of that term as employed in a municipal safety regulation: *Murphy v. Phila. Rapid Transit Co.,* 285 Pa. 399, 404, 405, 132 A. 194.

In the instant case, the jury might well have found that Coskey failed to exercise the vigilance required of him in the circumstances. He allowed his car to bear down on the intersection with unabated speed of twenty-five to thirty-five miles an hour when "he couldn't see very good; . . . his windshield was frosted". Aside from his own admission to that effect, made shortly after the accident, the fact that Coskey "was on top of [the] man before he saw him" confirmed his lack of vigilance. Yet, Atkinson must have been in plain view for some distance. Undeniably he was on the street and near the middle of it when he was knocked down. The street light at the intersection was burning as was also at least one, if not both, of the headlights of the Lamon automobile.

---

[1] See, e.g., *Morris v. Harmony Short Line Motor Transportation Company,* 348 Pa. 117, 120, 34 A. 2d 534; *Rhoads v. Herbert,* 298 Pa. 522, 525, 148 A. 693; *Parznik v. Central Abattoir Co.,* 284 Pa. 393, 396, 131 A. 372; *Gilles v. Leas,* 282 Pa. 318, 321, 127 A. 774; *Rosenthal v. Philadelphia Phonograph Co.,* 274 Pa. 236, 238, 117 A. 790; *Twinn v. Noble,* 270 Pa. 500, 503, 113 A. 686; *Mackin v. Patterson,* 270 Pa. 107, 109-110, 112 A. 738.

According to Coskey's statements, Atkinson was crossing from the easterly side of Virginia Avenue so that he had actually traversed more than half of the twenty-seven foot roadway before being struck and should, therefore, have been observable sufficiently long for Coskey to avoid hitting him, had Coskey been looking ahead *and seeing* as he should have been. The failure of Coskey to see Atkinson until he was right upon him was evidence of a lack of watchfulness amounting in the circumstances to causative negligence: see *Mackin v. Patterson,* 270 Pa. 107, 110, 112 A. 738.

In the light of the testimony, the trial court further transgressed its province in concluding that Atkinson had walked into the rear fender of the Lamon automobile. The police quoted Coskey as saying "he thought he had run over [the pedestrian]"; and none of the occupants of the automobiles testified that Atkinson had walked into Lamon's car. The only suggestion to that effect was the opinion advanced by a police officer as a result of his subsequent investigation. On the other hand, the jury could have found that Coskey, by swerving the automobile sharply to the right (when upon Atkinson), had caused the left rear of the car to sideswipe him and knock him to the street. Whether that was the result of negligence on the part of the driver of the automobile was for the jury to determine under the evidence in the case. And, if Coskey was negligent, then also was Lamon under the principle of *respondeat superior.*

Even if there was no crossing where Atkinson was traversing Virginia Avenue, while the degree of care required of the driver would not be as high as at a regular street crossing (cf. *Rhoads v. Herbert,* 298 Pa. 522, 525, 148 A. 693), it was, none the less, his duty to exercise reasonable care for the safety of the pedestrian upon the street: *Anderson v. Wood,* 264 Pa. 98, 101, 107 A. 658. The evidence to which we have already referred justified a finding that the Lamon car struck Atkinson because

Coskey failed to exercise ordinary care in the circumstances. In the present connection, we are treating only with the question of the liability of Coskey (and, by the same token, Lamon) and not with the alleged contributory negligence of the decedent which we shall consider later.

In the case of Rankin, the right-hand wheels of his automobile passed over Atkinson's body. The car ahead, having swerved sharply to the right, was coming to an abrupt stop and Rankin suddenly veered his car to the left. The jury could have found that Rankin's maneuver was executed in order to avoid running into the Lamon car and was rendered necessary because Rankin had continued to follow the Lamon car into the intersection at an unreduced speed of twenty-five to thirty-five miles an hour, no further back of the first car than twenty-five feet, as one of the witnesses estimated. The jury was entitled to consider that a vehicle travelling at thirty miles an hour goes forty-four feet in a second and greater or lesser distances in proportion to other relative rates of speed.

A driver is, of course, not bound to anticipate the negligence of another preceding him: *Stadale v. John J. Felin and Company, Inc.*, 119 Pa. Superior Ct. 364, 367, 181 A. 327. But, in approaching an intersection where the car ahead may have to slow down or stop because of a situation possibly to be encountered there, such as a pedestrian committed to a crossing, it is the duty of the driver of the car in the rear so to regulate the speed of his car as to prevent a rear-end collision: cf. *Lang v. Hanlon*, 302 Pa. 173, 177, 153 A. 143. It was for the jury to say whether Rankin was guilty of a want of care under the circumstances in following the Lamon car too closely at his rate of speed and, if so, whether it was such lack of care that compelled him to depart from his course forward, veer to the left and run over Atkinson's body as a consequence. The learned court below exculpated Rankin of negligence on the ground that he was placed in a position of sudden peril and therefore not

chargeable with an exercise of faulty judgment. But, under the evidence it was a question of fact for the jury to determine whether the position in which Rankin found himself was not one which his own negligence had created. If it was, then the sudden emergency rule would not serve to excuse his fault: see *Schiele v. Motor Freight Express, Inc.,* 348 Pa. 525, 528, 36 A. 2d 467.

In holding that the plaintiff had failed, as a matter of law, to make out a *prima facie* case of liability on the part of the defendants, the court below cited, as controlling, the case of *Sajatovich v. Traction Bus Company,* 314 Pa. 569, 172 A. 148. That case is not presently in point. There was no evidence whatsoever of any negligent conduct on the part of the driver of the bus in the *Sajatovich* case. All that the plaintiff there had to rest upon was the presumption of care attending the deceased victim of the accident. The decision was based on the plaintiff's failure to produce proof from which a jury could justifiably find that the defendant's negligence was the proximate cause of the injury. Such proof is in no way supplied by the presumed carefulness of the injured person. The case of *Whalen, Admrx., v. Yellow Cab Company,* 313 Pa. 97, 100, 169 A. 97, involved an injury to a pedestrian on a thoroughfare between crossings where, as this Court noted, "a vehicle need not be under instant control" (citing *Rhoads v. Herbert,* supra). But, more particularly, in the *Whalen* case there was "no proof whatever that the deceased was within the defendant cab driver's view for a sufficient time to enable the latter to avoid the accident if he had been vigilant". The facts of the instant case, as we have already related them, differentiate it from the *Whalen* case. The case of *Pfendler v. Speer,* 323 Pa. 443, 185 A. 618, turned on the rule applied in the *Sajatovich* case that "the mere fact that a collision has occurred cannot, in the absence of evidence as to the manner of its occurrence, afford proof that one party and not the other was at fault: [citing cases]".

There was no conclusively established fact in the plaintiff's case on the basis whereof the trial court could say as a matter of law that the decedent was guilty of contributory negligence. The testimony of the witnesses was conflicting; Coskey's relevant statements were self-contradictory. Contributory negligence may be declared as a matter of law only in clear cases: *Tancredi v. M. Buten & Sons*, 350 Pa. 35, 41, 38 A. 2d 55. And, that is no less true with respect to the conduct of a deceased victim of an accident who, in the first instance, is presumed to have exercised due care for his own safety: *Morin v. Kreidt*, 310 Pa. 90, 97, 164 A. 799. Being but a presumption of fact, it may, of course, be overthrown by proof to the contrary (*Cubitt v. New York Central Railroad Co.*, 278 Pa. 366, 371, 123 A. 308) and, if so overcome in the plaintiff's case, a non-suit on the ground of conclusively established contributory negligence is justified: see *Lieberman v. Pittsburgh Railways Co.*, 305 Pa. 412, 157 A. 905, upon which the court below relied for the entry of the non-suit in this case. In the *Lieberman* case, however, one of the eye-witnesses to the accident there involved testified in the plaintiff's case that, before the deceased victim was struck, "She wasn't even looking at the street car" which struck and killed her. In the instant case there is no testimony or other evidence, binding upon the plaintiff, that Atkinson was guilty of negligence. The fact is that none of the occupants of the automobiles, produced by the plaintiff as witnesses, was capable of testifying in such regard. None of them had seen Atkinson at any time before he was struck except for Coskey's fleeting glimpse, when his car was right upon the victim. The presumption that Atkinson had exercised due care implies that he had looked before undertaking the crossing and had concluded that he could cross in safety. Once thus committed to the crossing, the care he thereafter exercised in proceeding involved a question of fact which was for the jury to determine even if Atkinson was traversing

the street at a point other than a regular crossing: cf. *Anderson v. Wood,* supra. This is not a case of a pedestrian being struck upon stepping down from the curb. The court below was, therefore, not warranted in concluding that Atkinson either did not look before starting to cross the street or, having looked, chose to test an obvious danger. The accident, here involved, happened in the night time when there was nothing but the headlights of the automobiles from which to reckon their distance or speed. Judging from the distance Atkinson had traversed the street, before being struck, and the speed at which the automobiles were travelling, they must have been at some considerable distance when he began his crossing. The record now before us contains no evidence that convicts the deceased of negligence as a matter of law.

The order of the court below is reversed and a *venire facias de novo* awarded.