## Martin *v.* Statler, Appellant.

Argued March 24, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused May 12, 1952.

*J. Campbell Brandon,* with him *W. D. Brandon, Hugh S. Millar* and *Brandon, Millar & Duffy,* for appellant.

*Lee C. McCandless,* for appellees.

294

OPINION BY MR. JUSTICE MUSMANNO, April 23, 1952:

On September 19, 1949, at about 8 o'clock in the evening, A. E. Martin and his wife, Jessie Martin, were motoring northwardly on State Highway Route No. 8 in Butler County. Coming into the village of Cooperstown they stopped on their side of the road, to purchase fruit at a market located on the other side of the road which at this point is made up of three concrete slabs, each 10 feet wide.

Mrs. Martin, 68 years of age, alighted first from the car, walked around to the rear and then started across the highway to the fruit stand. She had advanced about 18 feet when a car speeding in from her right, turned off its forward lane, crossed over to the middle lane where she had now stopped, and hit her head-on with such force and violence as to send her body hurtling 30 feet through the air, killing her instantly.

In the ensuing lawsuit brought by the administrators of the estate of the deceased, the husband and daughter of Mrs. Martin, against the owner and driver of the colliding car, Robert A. Statler, under the wrongful death statute and the survival statute, the jury returned verdicts in their behalf, one for $5300 under the death statute and one for $10 under the survival act, or a total of $5310.

The defendant filed motions for a new trial and for judgment non obstante veredicto, which motions were overruled by the lower Court and the case is now before us on appeal from the decision of the Court below.

The defendant contends that the trial proved him innocent of negligence and proved the decedent contributorily negligent.

The evidence demonstrated defendant's negligence to have been almost wilful and wanton. The physical

facts clearly revealed that the velocity of his automobile far surpassed 50 miles per hour, the legal maximum speed through Cooperstown. The harrowing descriptions of the eye witnesses who saw Mrs. Martin's body lifted from the ground and shot through the air almost like a projectile, travelling at a height surmounting the windshield of a witness's car, and the finding of one of her shoes beneath an auto trailer a considerable distance from the point of the collision all reveal the locomotive propulsion of the defendant's automobile over the concrete highway.

The defendant stated that he did not see the decedent until he hit her, and this is confirmed by the fact that he did not apply any brakes before the actual striking. This was practically negligence per se. In *Mackin v. Patterson*, 270 Pa. 107, 112 A. 738, this Court said: "The fact that the chauffeur did not see plaintiff until within eight feet, also tends to show lack of watchfulness on his part, for the day was bright and she was in plain sight from the time of leaving the curb."

And in *Atkinson, Admrx., v. Coskey*, 354 Pa. 297, 47 A. 2d 156, where a similar situation was involved, this Court said: ". . . the fact that Coskey 'was on top of [the] man before he saw him' confirmed his lack of vigilance. Yet, Atkinson must have been in plain view for some distance. Undeniably he was on the street and near the middle of it when he was knocked down. The street light at the intersection was burning as was also at least one, if not both, of the headlights of the Lamon automobile. According to Coskey's statements, Atkinson was crossing from the easterly side of Virginia Avenue so that he had actually traversed more than half of the twenty-seven foot roadway before being struck and should, therefore, have been observable sufficiently long for Coskey to avoid hitting

him, had Coskey been looking ahead and seeing as he should have been. The failure of Coskey to see Atkinson until he was right upon him was evidence of a lack of watchfulness amounting in the circumstances to causative negligence: See Mackin v. Patterson, 270 Pa. 107, 110, 112 A. 738.''

The defendant explained that he swung from his right side of the road and entered into the middle lane in order not to hit anyone who might be coming *away* from the fruit stand. But it was just as important for him not to hit anybody going *to* the fruit stand.

He said further that he failed to distinguish objects on the left side of the road because of the bright lights over the fruit market, but it was his duty, if the clustered lights affected his vision, to slow down so that he could see what was ahead of him. In connection with a similar situation, it was said in the *Atkinson* case already quoted from: ''In the instant case, the jury might well have found that Coskey failed to exercise the vigilance required of him in the circumstances. He allowed his car to bear down on the intersection with unabated speed of twenty-five to thirty-five miles an hour when 'he couldn't see very good; . . . his windshield was frosted'.''

It was the defendant's duty to look in the direction in which he was traveling and his inattention to that duty will not relieve him from liability for injuries which could have been avoided had he looked. Attorney Wherry, who was driving on the highway, saw the decedent when he was two hundred feet away; Taylor, a truck driver, saw her when he was one hundred and fifty feet distant from her, and the defendant's witness, E. J. A. Kelly, testified she was in full view when one hundred and fifty feet separated his car from her. It is reasonable to conclude therefore, that had the defendant also looked ahead as it was his duty to do, he

too could not have failed to see her. Attorney Wherry testified that there was no other traffic on the highway except the defendant's car and a truck.

The contention of the defendant that the decedent was guilty of contributory negligence as a matter of law is as devoid of merit as his pretension that he was free from negligence. Even though the passage across the highway in front of the fruit market was not an established crossing, this did not convict Mrs. Martin of contributory negligence provided she used the degree of care required under the circumstances. In *Hamilton v. Moore,* 335 Pa. 433, 438, 6 A. 2d 787, this Court said: "Although a pedestrian who crosses a street between intersections must exercise a higher degree of care for his safety than one who crosses at an intersection: Johnson v. French, 291 Pa. 437; Fearn v. City of Philadelphia, 320 Pa. 156, this does not mean that one who crosses at such a point is negligent as a matter of law: Anderson v. Wood, 264 Pa. 98."

The defendant admitted that although he did not see people crossing at this point of the highway he "assumed" that they did, and a witness, State Policeman P. E. Faidley, testified that there were no cross-walks in that area.

Appellant's counsel emphasizes the testimony that the decedent stood in the center "as if frozen to the spot." This frozen immobility of which the defendant complains should have been and would have been his protection if he had remained on that slab of concrete assigned to him by the law of the road. But even if the decedent came to a dead stop, being paralyzed with fear because the defendant's car suddenly headed in her direction, the defendant may not complain that she failed to exercise the best judgment possible when it was he who created the emergency: *Di Bona, Admr., v. Phila. Transportation Co.,* 356 Pa. 204, 51 A. 2d 768; *Maselli et al. v. Stephens,* 331 Pa. 491, 200 A. 2d 590.

The case of *Miller v. Gault*, 345 Pa. 474, 29 A. 2d 71, relied upon in appellant's counsel's brief, is as distinguishable from the instant one as it was from the case of *Martino v. Adourian*, 360 Pa. 580, 63 A. 2d 12, where this Court stated: "The court below stated that the usual person walks about six feet per second citing Miller v. Gault et al., supra, p. 481. Applying this formula it concludes that plaintiff was struck three seconds after she last looked. The inference is that she must have stepped in front of defendant's approaching car. But the record in Miller v. Gault et al., supra, discloses that the plaintiff there was a woman of forty-five years whereas the plaintiff in this case was sixty-six years old. The jury and not the judge should decide whether a woman sixty-six years old, under the circumstances, would walk at the rate of six feet per second."

In the case at bar the decedent was 68 years of age at the time of the accident and it was for the jury to decide whether the defendant's car was in view when she began to cross and, if it was, whether she had reason to believe that it was safe for her to cross, especially since it is now established she had already traversed 18 feet of the 30-foot highway before the collision.

When Mrs. Martin started across to the fruit market she had the right to rely on the assumption that motorists on the highway would use ordinary care to save her from harm. Her failure to anticipate the culpable indifference of the defendant does not preclude the administrator of her estate from recovery for damages sustained through her death because of the negligence of that defendant.

We have found no errors in the trial of the cause which would justify a new trial, nor does the record warrant a judgment notwithstanding the verdict. The judgment of the lower Court is, therefore, hereby affirmed.