## Amodei, Admr., v. Saunders, Appellant.

Argued April 23, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

Appeal, No. 268, reargument refused June 29, 1953.

*J. J. Kilimnik,* for appellant.

*I. Raymond Kremer,* with him *A. Bernard Hirsch,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 25, 1953:

On November 6, 1948, Giovanni Amodei, 53 years of age, while crossing Rising Sun Avenue at its intersection with Goodman Street, in the City of Philadelphia, was struck and killed by an automobile owned and operated by the defendant, Henry Steven Saunders. The administrator of his estate recovered a verdict of $12,300 in the ensuing trial against the defendant. From the judgment entered on that verdict the defendant

has appealed, contending through his counsel that there was not sufficient evidence to take the case to the jury, the decedent was guilty of contributory negligence and the verdict was against the evidence and the weight of the evidence.

Rising Sun Avenue, which is 38 feet wide, runs east and west, and Goodman Street, 18 feet wide, runs generally north and south. In crossing Rising Sun Avenue from the south, Goodman Street does not penetrate straight through but jumps to the east a house width, (in the form of a 10 foot cinder road) so that we might visualize this intersection as a cross with the head piece distorted to the right (this being the continuation of Goodman Street); the arms being Rising Sun Avenue; and the base being Goodman Street south of Rising Sun. November 6, 1948, was a clear dry day, with no atmospheric or geographical impediment to the defendant's vision of the crucial street area.

Witness Erminio Iacovetti testified that he talked to Amodei on the southeast corner of Goodman Street and Rising Sun, saw him cross over to the southwest corner of the intersection and then commit himself to the intersection. A few moments later he heard a woman scream and he saw the automobile collide with Amodei on the north side of Rising Sun, which would mean that Amodei had traversed more than one half of the intersection when struck. Iacovetti saw no other automobile on the street.

The witness Eva Scheeler who lived at 1131 Rising Sun Avenue, the house immediately west of the northern projection of Goodman Street, looked out the window and saw the decedent crossing Rising Sun Avenue, "catercorner" from the southeast to the northwest corner of the intersection. When he got to the middle of the street he moved faster, she said. At a point somewhere between 1133 and 1135 Rising Sun Avenue, he was hit. "I seen him just fly up. I don't know how

far, either; I just seen the man fly and I hollered—'somebody got killed.' " The fact that the violence of the collision hurled the decedent's body into the air would indicate that the defendant's car was travelling with more than normal speed through the intersection.

The testimony of Accident Investigation Officer Rowland, given before the Coroner, was read into the record and it revealed that the defendant pointed out on the street his car's skid marks which measured 27 feet in length. The right wheel skid mark was 15 feet south of the north curb line of Rising Sun Avenue. Since the street is 38 feet wide, and it is general knowledge that the width of the normal automobile is usually about five feet, it mathematically follows that Saunders was not entirely on his side of the street.

The officer stated further that he found a blood mark on the street 18 feet from the end of the skid tracings. This logically demonstrates that either the pedestrian was violently propelled 18 feet by the impact of the collision or that Saunders, after freezing his brakes for the distance of the skid, suddenly released them and sped the remaining 18 feet with wheels rotating in full traction. Either analysis, (and there can hardly be a third one,) attaches blame to the offending motorist.

Appellant's counsel proceeds on the assumption that this is a case based solely on circumstantial evidence, but in this he errs. With his eyes Iacovetti followed the decedent from the time he was with him at the southeast corner of the intersection until he got to the southwest corner and started across Rising Sun Avenue. Mrs. Scheeler picked up Amodei from that point and visually accompanied him to the very point of collision where she witnessed the impact which sent the body hurtling into space. Adding to this direct testimony, the incontrovertible evidence of the

skid marks (pointed out by the defendant himself), the conclusion is inescapable that had the defendant approached the street intersection at the speed required by the circumstances and with the control dictated by law, he would have been able to stop his car in time to avoid striking the pedestrian who had the right to be where he was. The jury properly found that the defendant was negligent.

The jury was also warranted in concluding that the decedent was free of contributory negligence. The fact that Mrs. Scheeler testified that when Amodei reached the middle of the street he "moved faster" does not say that he contributed to the happening of the tragedy. The accelerated movement mentioned by the witness is not to be confused with a "darting out" case where the traffic victim is depicted as dashing out from a haven of safety to a place of obvious danger. Amodei had already traversed one-half of the intersection when he "moved faster." This movement could well have been his attempt to avoid the onrushing vehicle about to crush him beneath its wheels. The law does not require that in a moment of extreme peril and overwhelming fright not self-induced, a pedestrian should do the precise thing which a posthumous investigation decides would have been the perfect course to follow.

In the case of *Maselli v. Stephens,* 331 Pa. 491, the plaintiff ran a few steps in an attempt to reach the curb before being struck by an automobile. The defendant contended that she should have remained stationary, or stepped back from the machine rather than to try to complete the crossing. In affirming a verdict returned in favor of the plaintiff, this Court, passing on the question posed, said: "Under the decisions of this Court it is not required that she choose what might have been a safer course, nor to exercise the best judgment whether she should advance, retreat or stand

still in an emergency which she did not create: Restatement, Torts, Section 470; Mulhern v. Brown, 322 Pa. 171. Under the circumstances she was justified in believing that the longer she remained in the roadway the greater was her peril. The jury could therefore fairly infer from the evidence that the defendant's automobile was proceeding into the crossing at such speed that plaintiff, no matter how careful, could not have escaped the accident."

The Superior Court well stated the rule in *Uhler v. Jones,* 78 Pa. Superior Ct. 313, 318: "Having entered upon the crossing of this intersection without negligence on his part, the plaintiff cannot be convicted of contributory negligence as a matter of law because in a moment of sudden peril caused by defendant's negligence he did not with lightning-like rapidity calculate the distance yet to be traversed, in connection with his own rate of travel and the speed of the approaching peril, and accurately balance that against his likelihood of escape by stopping in the middle of a narrow road right in the path of the oncoming danger. As the court below, in its opinion refusing judgment non obstante veredicto, said: 'While it is easy for others now coolly to sit down and say that he might have done this or he should have done that, his conduct is to be judged as of the time and under all the circumstances surrounding the accident.'"

Nor is it certain that Amodei actually did accelerate his pace. At one point in her examination, Mrs. Scheeler said: "I don't know if he run—I just seen him come across the street and then all at once I seen him go up in the air, like, and I hollered."

In addition to the fact that in this review the plaintiff is entitled to have every proper inference from the testimony resolved in his favor,[1] he also has the right

---

[1] *Phillips v. Phila. Transportation, et al.,* 358 Pa. 265.

to the benefit of the presumption that a decedent used due care.[2]

We have in this case a question of fact peculiarly and precisely one for a jury to decide[3] and we are satisfied from a reading of the record that the verdict of the jury is amply supported by the facts as to the negligence of the defendant and the lack of contributory negligence on the part of the decedent.

Appellant's counsel complains also of errors in the Trial Court's charge. A careful study of the charge fails to reveal any reversible error. The charge was not only adequate but painstakingly clear, instructive and impartial. It was exemplary in that, without suggesting what the jury should do, it supplied the necessary guidance which permitted the jury to reach the goal of a just verdict.

Judgment affirmed.

[2] *Harris v. Reading Co.*, 325 Pa. 296.
[3] *West Chester & P. R. R. Co. v. McElwee*, 67 Pa. 311.