## Lescznski, Appellant, *v.* Pittsburgh Railways Company.

Argued October 8, 1962.   Before BELL, C. J., MUS-MANNO, JONES, EAGEN and KEIM, JJ.

*F. E. Conflenti,* for appellant.

*Leo Daniels,* with him *Prichard, Lawler & Geltz,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 13, 1962:

This is an appeal from a judgment entered in a trespass action upon a verdict, directed by the trial court, in favor of Pittsburgh Railways Company (Railways) and against Josephine Lescznski, administratrix of the Estate of Stanley Lescznski (Lescznski).

The factual background of the accident which gave rise to this litigation has been well stated by the court below: ". . . Stanley Lescznski, a seventy-nine year old man, was struck and killed by a trolley operated by [Railways'] employee on Main Street in the Borough of Sharpsburg. The accident occurred at about 4:15 p.m. on April 17, 1954. Main Street is a four lane highway, 32 feet wide, running in an east-west direction with two trolley tracks occupying the center of the cartway. At the time in question [Lescznski] was standing on the North side of Main Street on the East side of its intersection with Nineteenth Street as extended. There was no evidence of the manner in which he crossed the street other than the statement of [Lescznski's] witness, the trolley operator, who said that he crossed from left (North) to right (South) . . . He was next observed at the time he was struck by [Railways'] eastbound street car. There was no testimony that the trolley was speeding or had failed to stop as quickly as possible when the danger was first observed. Sand deposited on the tracks by the braking system of the street car shows that the operator of the trolley applied the brakes and stopped the car within 45 feet. . . . The testimony further indicates that the point of impact was the southeast corner of the intersection of Main Street and Nineteenth Street. This is a 'T' intersection as Nineteenth Street extends South from Main Street but not to the North of that highway. [Lescznski] was found lying partly beneath the cow catcher on the under side of the front of the car. . . . At the time of the accident, 4:15 p.m., Main Street was dry and clear and traffic was said to be

generally light at this time . . . . The street . . . is level and without curvature for more than 200 feet in either direction from the point of impact. It must, therefore, be inferred that both parties had an equal opportunity to observe each other."

Lescznski instituted an action, under both the survival and wrongful death statutes, in the Court of Common Pleas of Allegheny County against Railways claiming that Lescznski's death had been caused by the negligence of the Railways' operator of the trolley car. At trial, at the conclusion of Lescznski's and the Railways' testimony, the court directed the jury to return a verdict in favor of Railways and against Lescznski. A motion for a new trial was dismissed and the court directed the entry of judgment on the verdict and, from that judgment, this appeal was taken.

The trial court below directed the verdict on two grounds: (1) that Lescznski had failed to prove that Railways was negligent and (2) that the testimony indicated that Lescznski had been contributorily negli-gent as a matter of law. The propriety of that action of the court is now before us for determination.

Did Lescznski prove any negligence on the part of the Railways? In resolving this question we must bear in mind: (1) that Lescznski is entitled to the benefit of every fact and every inference that may reasonably be deduced from the evidence: *Lear v. Shirk's Motor Express Corporation,* 397 Pa. 144, 148, 152 A. 2d 883; *Klatt v. Daniels,* 173 Pa. Superior Ct. 563, 565, 98 A. 2d 649; (2) Lescznski is entitled to the rebuttable presumption that Lescznski at the time of the accident was exercising due care: *Lear v. Shirk's Motor Express Corporation,* supra, 148; (3) this presumption of due care does not constitute proof that Railways was negligent: *Duda v. Carothers,* 379 Pa. 248, 108 A. 2d 791; (4) the mere happening of this accident does not prove negligence on the part of either Lescznski or Railways:

*Schofield v. King,* 388 Pa. 132, 130 A. 2d 93; (5) "[e]vidence sufficient to warrant recovery must describe, picture or visualize what actually happened sufficiently to enable the fact-finding tribunal reasonably to conclude that the defendant was guilty of negligence and that his negligence was the proximate cause of the accident:" *Lear v. Shirk's Motor Express Corporation,* supra, 149; (6) the burden of proving *how* Lescznski was killed was on his personal representative: *Hulmes v. Keel,* 335 Pa. 117, 119, 6 A. 2d 64.

The facts upon which Lescznski relies to show negligence are specifically set forth in his brief: (a) Lescznski, 79 years old and with a cane in one hand and a newspaper in the other, crossed the highway from north to south as the trolley approached; (b) Main Street, "a main thoroughfare", at the time of the accident had "lighter than usual" traffic and there were no parked cars at or near the scene of the accident; (c) Lescznski had traversed 24 of the 32 foot highway before being struck; (d) the first trolley stop immediately preceding the point of accident was 225 feet distant; (e) the speed limit at the place of accident was 25 miles per hour; (f) Lescznski, struck at the street intersection, was *dragged* under the "cow catcher" of the trolley car for a distance of 45 feet;[1] (g) that a witness who saw Lescznski struck was directed to the accident by the sound of a streetcar coming to a stop and heard a "screeching noise";[2] (h) there was sand on the tracks for a distance of 45 feet; (i) after the accident Lescznski's body was under the trolley car and

---

[1] This statement is not supported by the record.

[2] This witness did not say he saw the decedent *struck* by the trolley: he did say that he didn't know if he saw him hit or falling down. The actual testimony as to the noise was: "Q. What drew your attention to the scene of the accident, Mr. Neeley? A. I think maybe it was the sound of the street car coming to a stop. Q. Did you hear any noise? A. Screeching noise."

on the "cow catcher", with feet toward the curb toward which he was proceeding and his head toward the curb from which he had come, the whole body being under the car and to the right of the center thereof; (j) Lescznski's body was removed by "jacking up" the car; (k) the accident happened in daylight. From these alleged facts it is contended that the Railways has been proven negligent and that such negligence caused Lescznski's death. With this contention we cannot agree.

Lescznski relies principally upon five cases: *Amodei v. Saunders,* 374 Pa. 180, 97 A. 2d 362, *Atkinson v. Coskey,* 354 Pa. 297, 47 A. 2d 156, *Martin v. Statler,* 370 Pa. 293, 88 A. 2d 46, *Pantazis v. Follweiler,* 364 Pa. 553, 73 A. 2d 410 and *Fitzko v. Gaughenbaugh,* 363 Pa. 132, 69 A. 2d 76. As Mr. Justice Musmanno clearly pointed out in *Amodei,* supra, there were present various indicia of negligent conduct: the violence of the collision hurled the decedent's body into the air indicating that the defendant was traveling through the intersection at more than normal speed, from the presence of the right wheel skid mark of defendant's car it appeared that defendant's car was *not* wholly on *its* proper side of the street, and the presence of a blood mark 18 feet from the end of the skid tracings demonstrated that either decedent was hurled by the impact 18 feet or that defendant, after freezing his brakes for the distance of the skid, suddenly released them and went 18 feet with the car in full motion. In *Atkinson,* supra, there was evidence that at nighttime defendant drove his automobile with one of his headlights not working on low beam, with a frosted windshield and admittedly limited visibility and that defendant was not attentive to the roadway together with an admission that he did not see decedent until after he had hit him. In *Martin,* supra, there was evidence that decedent was in plain view on the highway to three witnesses who were from 150 to 200 feet distant from her, that decedent was

struck with such force that she was propelled into the air higher than the windshield of a car and one of her shoes thrown a considerable distance from the point of impact, that defendant did not apply any brakes before he hit decedent, claiming he did not see her until he hit her, and that defendant swerved from his right lane to a middle lane where decedent was at the time of impact. In *Pantazis,* supra, the "indisputable physical facts" clearly warranted an inference that the defendant was inattentive to his duty of operation of the car. In *Fitsko,* supra, there was sufficient evidence to justify submission to the jury of the question whether the defendant was duly attentive to his driving. The facts in all these cases are far different than the facts or inferences presented in the case at bar.

In the case at bar, there are no facts nor inferences from facts which give rise to any reasonable inferences of negligent conduct on the part of Railways. Lescznski simply failed to prove *how* this accident happened. How did Lescznski get from his position on the north side of the street to the point where he was struck? One witness testified that, when struck, Lescznski was in the center of the track, while another witness showed that Lescznski approached that position in a diagonal manner. There is no evidence whether this accident happened at the intersection or at a point between intersections and the actual point of impact on the cartway was not established. Furthermore, there is not a scintilla of evidence to show any speed on the part of the trolley car; certainly the established fact that the trolley car stopped within 45 feet after braking by sand not only contraindicates high speed but indicates a low speed. In this connection it must be noted that there is no evidence that decedent was *dragged* 45 feet, or any distance, by the trolley car. As Railways well contends, the fundamental defect in Lescznski's case is the failure to show where the trolley car was at any

time or at any point during Lescznski's approach to the track or to show how far away from the point of the accident either the trolley car or the decedent was at any phase of the occurrence. Lescznski's testimony falls far short of the standard of proof required for the *manner* of the happening of this accident remains unvisualized and unproven; a resolution of the question of negligence on the testimony of record would have to be on the basis of conjecture and guesswork.

*Niziolek v. Wilkes-Barre Railway Corporation*, 322 Pa. 29, 185 A. 581, *Hulmes v. Keel*, 335 Pa. 117, 6 A. 2d 64, and *Sajatovich v. Traction Bus Co.*, 314 Pa. 569, 172 A. 148 present situations somewhat analogous to the instant situation. The language of this Court in *Niziolek*, supra (p. 31), where a pedestrian was killed at nighttime by a streetcar at a point where both the motorman and decedent had a clear view of 140 feet, the streetcar lights were on and bloodstains were found on the track for a distance of 40 feet, particularly points up Lescznski's failure of proof in the instant case: "How did defendant's car and plaintiff's husband come into collision? No witness testified on this point, nor does it appear from the circumstances. *What was the distance from the car to the object when it was seen by the motorman?* How soon after seeing the object did the accident occur? *How far did the car travel in the meantime?* The evidence *throws no light on these vital questions.*" (Emphasis supplied)

In *Johnston v. Dick*, 401 Pa. 637, 639, 165 A. 2d 634, the late Mr. Justice BOK, speaking for this Court, stated: ". . . our task is to discover whether there is any evidence at all that works legally for the plaintiff: [citing a case]" and concluded that the "jury had to guess rather than choose". In the instant case, the "jury had no option but to guess what the defendant might have done".

In view of the conclusion which we have reached, it is unnecessary for us to determine or resolve Lesczn-ski's second contention, i.e., that he was not guilty of contributory negligence as a matter of law.

Judgment affirmed.

Mr. Justice MUSMANNO dissents.