Marion YEAGER, Administratrix of the Estate of Robert W. Trate, Deceased

v.

J. R. CHRIST CO., Inc., et al.

Marion YEAGER, Administratrix of the Estate of Robert W. Trate, Deceased

v.

MAST ENGINEERING CO., Inc., et al.

Civ. A. Nos. 28957, 28964.

United States District Court
E. D. Pennsylvania.

May 23, 1967.

Richter, Lord & Cavanaugh, Arthur G. Raynes, Philadelphia, Pa., for plaintiff.

La Brum & Doak, Daniel J. Ryan, Philadelphia, Pa., for J. R. Christ Co., Inc.

Liebert, Harvey, Bechtel, Herting & Short, Norman Paul Harvey, Philadelphia, Pa., for Mast Engineering Co.

## OPINION

KRAFT, District Judge.

Following a second trial of these actions, brought under the Wrongful Death and Survival Acts of Pennsylvania,[1] the jury returned verdicts in favor of the remaining defendants,[2] J. R. Christ &

---

1. 12 P.S. § 1601 and 20 P.S. § 320.601.

2. Defendant, William Campbell, was eliminated as a party pursuant to a stipula-

Co., Inc. (Christ) and Mast Engineering Co., Inc. (Mast).

Following the entry of judgment upon the verdicts the plaintiff filed a timely motion for new trial in support of which 42 reasons were assigned. The record reveals, however, that plaintiff's counsel properly preserved *but* seven grounds,[3] by specific exceptions following our charge. (n. t. 597–601).

Of these seven grounds, the plaintiff's brief and oral argument[4] pressed only the following: (1) the charge of the Court was one-sided in favor of the defendants by the overemphasis placed by the trial judge on the defendant's contentions and unfair comments by the trial judge on the evidence; (2) the Court erred in its charge on contributory negligence; (3) the Court erred in its charge on the burden of proof of the plaintiff.

The plaintiff's theory of liability was " * * * that her husband was killed when knocked from the standing-rear platform of a backing-up fire truck on which he was riding, when it banged down and/or got stuck in a sunken sewer lateral. The responsibility that flowed from the sunken sewer lateral was a critical issue in the case and upon which plaintiff's entire case was bottomed. Plaintiff contended that the defendants were negligent for (1) improperly tamping and backfilling the ditches; (2) improperly inspecting and maintaining the ditches; and (3) inadequately barricading the street under the circumstances." (Plaintiff's brief in support of motion for new trial, p. 4.)

The accident was unwitnessed and the plaintiff's case was based on circumstantial evidence. In this regard, we charged the jury on the plaintiff's burden of proof as follows, at p. 561:

"When a party, as the plaintiff in this case, who has the burden of proof, relies upon circumstantial evidence and inferences reasonably deductible therefrom, such evidence, that is circumstantial evidence, in order to prevail, must be adequate to establish the conclusion sought, and must so preponderate in favor of that conclusion as to outweigh in your minds any

---

tion of counsel, approved by the Court (n. t. 1–4). In Civil Action No. 28957, by agreement of counsel, the plaintiff's action against Spring Township was dismissed (n. t. 487). In Civil Action No. 28964, the action was dismissed against Gerald Wassner, by agreement of counsel (n. t. 892).

3. The plaintiff excepted to the charge of the court as follows:

(a) There was no factual basis for the Court to charge on superseding cause.

(b) Error resulted from the Court's failure to charge in the statutory language that a duty is imposed on a contractor to make a road under repair "reasonably clear of impediments."

(c) The Court's refusal to read plaintiff's point for charge No. 5.

"5. The plaintiff in order to recover is not required to eliminate every possible cause of the accident. It is sufficient for a plaintiff to produce enough evidence in question and the probable consequential effect on the operation. If you find that the defendant did not use reasonable care to restore the street to a state of reasonable safety and that their failure to exercise such reasonable care was a substantial factor in causing the death of Mr. Trate your verdict should be for the plaintiff. Seigler [Siegler] v. Counties Con. & Con. Co., 203 Pa.Super. 568 [202 A.2d 127] (1964)."

(d) All of the plaintiff's contentions as to liability were not stated by the Court.

(e) The charge on contributory negligence was inadequate since no mention of the reasonably prudent man standard was given by the Court.

(f) The Court failed to instruct the jury that a man could live longer than the life expectancy tables projected.

(g) By affirming and reading many of the defendants' points for charge which had been covered in the main charge, the Court placed undue emphasis on contributory negligence.

4. At argument on the plaintiff's motion, we granted the parties additional time to submit supplemental briefs after they had received the transcribed notes of the Court's charge. No supplemental briefs were ever filed with the Court.

other evidence and reasonable inferences therefrom which are inconsistent therewith."

Plaintiff's counsel contends that the foregoing language imposed upon the plaintiff a burden of proof not required by Pennsylvania law, as set forth in Smith v. Bell Telephone, 397 Pa. 134, 153 A.2d 477 (1959). We disagree. Our charge was an exact quotation from *Smith,* which held (p. 139, 153 A.2d p. 480):

> "Therefore, when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deductible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith."

There was sufficient evidence in this case from which at least two other explanations of this accident, inconsistent with the plaintiff's theory of liability, might reasonably have been inferred. The decedent may have jumped or stepped from the rear platform of the truck, if, in fact, the truck was stuck in the ditch; or, he may have fallen therefrom in an attempt to prevent the unsecured pump from falling off. The pump, which weighed approximately 200 pounds, was simply resting on the rear platform, where, customarily, it was held in place by a fireman's foot.

Christ produced evidence to establish that there were barricades, reading "ROAD CLOSED", flares and warning signs located at each end of the block [5] where the accident occurred. There was evidence which, if believed, was sufficient to prove that the backfilling and tamping of the sewer laterals had been properly done. The particular lateral in front of 2133 Cleveland Avenue, when inspected by Officer Davis at 4:30 p. m. on December 12, disclosed no settlement

whatever. Later, at 5:30 p. m., some slight settlement was noted. There was evidence that inspection at 6:30 p. m., revealed that it had settled rapidly in various parts to depths of 8 to 16 inches. This degree of settlement in this time period, in a ditch 23 feet long and 3 feet wide, could be found to have been caused by a subsidence of the soil, arising from a cause other than improper backfilling or tamping.

At 7:00 p. m., about half an hour before the accident, a Mr. Matthews, who resided at 2128 Cleveland Avenue, drove his 1951 Rambler station wagon eastwardly over the sewer laterals and experienced no difficulty. This witness later observed the fire truck backing eastwardly on Cleveland Avenue toward Morwood Avenue. He noted that the truck stopped only momentarily at each lateral and then backed over. He testified that the last lateral over which the truck backed seemed deeper than the rest, but that the action of the truck appeared the same, except that it had a harder time getting over it. Mr. Matthews first saw the decedent only when he noticed the body of a man lying in the street.

The truck driver, Mr. Campbell, testified that he only felt slight bumps, which were all about the same as he backed down the street; that he was backing at a speed between 0 and 5 miles per hour toward the home of Mr. Marcus, another volunteer fireman, who was to accompany Mr. Campbell and the decedent to another part of the community to pump out a cellar partially flooded by the heavy rain then falling. Mr. Campbell heard no unusual noise and noted that "nothing happened" during the trip along Cleveland Avenue. When he stopped the truck, upon arrival at the Marcus home, someone approached and told him that a man was lying in the street. This was Mr. Campbell's first knowledge of an accident.

The pump was found jammed beneath the fire truck in front of the rear plat-

---

5. 2100 block of Cleveland Avenue, West Wyomissing Village in Spring Township, Pennsylvania.

form. Tire tread marks, similar to the fire truck's diamond tread, were found in the lateral at 2133. There was no evidence that the wheels of the truck had run over the decedent, who was lying with his head near the north curbline, approximately thirty feet east of the lateral at 2133 Cleveland Avenue. He died in an ambulance en route to the hospital.

Officer Davis testified that he had interviewed Mr. Campbell on the night of the accident around 9:30 p. m. He testified that Mr. Campbell then told him that the truck had become stuck in the lateral and he had had to "yo-yo" the truck to get it out. At the trial, Mr. Campbell testified, however, that he had only asked Officer Davis to find out if Mr. Trate was dead or alive. Campbell was not a party to the action at this trial (see footnote 2) and the statements attributed to him by Officer Davis were not admitted against Christ.[6]

██ In our view the jury was entirely warranted, under the applicable Pennsylvania legal standard, in concluding that the plaintiff had failed to establish by a fair preponderance of the evidence that the decedent was " * * knocked from the standing-rear platform of a backing-up fire truck * * * when it banged down and/or got stuck in a sunken sewer lateral." That standard, applicable under the evidence in this case, is set forth in Lear v. Shirk's Motor Express Corp., 397 Pa. 144, 149, 152 A.2d 883, 886 (1959), in which the late Mr. Justice McBride, speaking for the Court, said:

"*Evidence sufficient to warrant recovery* must describe, picture or visualize what *actually happened sufficiently* to enable the fact-finding tribunal *reasonably to conclude* that the defendant was guilty of negligence and that his negligence was the proximate cause of the accident." (Emphasis ours.)

Plaintiff's counsel argues that he was not required to show what "actually happened" under the *Smith* case, supra and the earlier opinion of our Court of Appeals in the instant case, which reversed this Court after the first trial. Yeager v. J. R. Christ Co., Inc., et al., 364 F.2d 96 (3 Cir. 1966).

At the close of the plaintiff's evidence in the *first* trial, we *directed* the jury to enter a verdict in favor of the defendants, because, in our view, even assuming negligence, we thought the evidence insufficient to support a finding of proximate cause. The Court of Appeals, in reversing the judgment entered upon this direction, held, at p. 100:

"The court below assumed without deciding, that there was sufficient evidence to permit the jury to find 'that one, more, or all of the defendants were negligent.' However, it held that: '*the evidence with all the inferences that are reasonably deductible therefrom does not in our considered judgment so describe, picture or visualize what actually happened as to enable a jury reasonably to conclude that such negligence, if found, was a proximate cause of' the decedent's fatal injury. It would appear that the court was guided by a precedent which was expressly overruled in Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 153 A.2d 477, 480 (1959)." (Emphasis ours.)

With the conclusion expressed in the last sentence we must respectfully disagree. The relevant language, disapproved by the Court of Appeals, was then, and still is, the prevailing law of Pennsylvania.

The Pennsylvania Supreme Court employed that language in Lear v. Shirk's Motor Express Corp., supra, which was decided on the *same day* as *Smith*. Both opinions *were written by the late Mr. Justice McBride,* and appear, respectively, in 397 Pa. at pages 144 and 134, 152 A.2d 883, 153 A.2d 477.

When, in the first trial, we directed the jury to render a verdict in favor of the defendants, we made reference to the case of Ashby, Admr. v. Philadelphia T.

---

6. Mast interposed no objection.

C., 356 Pa. 610, 612, 52 A.2d 578 (1947), wherein the Court used the same language.

In Smith v. Bell Telephone, supra, the Court disapproved only the former Pennsylvania formula that "the circumstances must be so strong as to preclude the possibility of injury *in any other way* and provide as *the only* reasonable inference the conclusion plaintiff advances." (Emphasis supplied.) Until *Smith,* this had been the rule in cases sought to be established by circumstantial evidence. However, in rejecting the earlier standard, the Court carefully *limited* its effect on cases previously relied upon as precedent for that rule, saying at 397 Pa., p. 137, 153 A.2d p. 479:

> "Insofar as *this rule is stated* in our cases it is disapproved.[1] (Emphasis ours.)

> "1. Among the cases citing this rule are [inter alia]: * * * Schofield v. King, 388 Pa. 132, 130 A.2d 93. * * * Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517. * * * Ashby, Admr. v. Philadelphia Transportation Co., 356 Pa. 610, 612, 52 A.2d 578 * * *."

After careful analysis it is our opinion that the Supreme Court, in *Smith,* intended to overrule the cited cases *only* "insofar" as they *applied* the "only reasonable inference" test, and not for all purposes. This conclusion finds strong support in *Lear,* in which the Supreme Court (397 Pa. p. 149, 152 A.2d 883) *repeated* precisely the language used in *Ashby,* which we had previously employed. Lescznski v. Pittsburgh Rys. Co., 409 Pa. 102, 106, 185 A.2d 538 (1962) is a later firm reiteration.[7] While not controlling, it is noteworthy that Shepard's Pennsylvania Citations records *Smith* as "questioning" *Ashby* and not "overruling" it.

■■ Whatever conflict may appear to exist in this regard between *Smith,* on the one hand, and *Ashby, Lear* and *Lescznski,* on the other, and we perceive none, when a case based on circumstantial evidence has been properly submitted to a jury—once the fact-finder has considered the evidence and rendered its verdict, a court may not set aside the verdict, unless it is so clearly against the weight of the evidence as to be contrary to right and justice. This was not such a verdict.

The plaintiff's complaint of our charge concerning contributory negligence is without merit. Evidence was adduced that a safety belt was attached to the rear of the fire engine; that, after the accident, the straps of the safety belt were found not to be fastened. There was uncontradicted evidence that all the firemen had been instructed at meetings (which had been attended by the decedent) always to use the safety belt when standing on the rear platform. Moreover, left unoccupied was the seat beside the driver, which was available to the decedent who elected, instead, to stand on the rear platform beside the unsecured 200 pound pump.

■ Mr. Campbell testified that he and the decedent had together decided to back the fire engine along Cleveland Avenue, in the rain, on the night of the accident. There was no emergency or urgent necessity to proceed in this manner. In fact, they might as well have awaited Mr. Marcus at the firehouse or driven the truck in a forward direction around the block on Garfield Avenue, then turned onto Morwood, then to Cleveland to Mr. Marcus' house. The only apparent reason that the decedent and Campbell elected to back along Cleveland Avenue was to minimize Mr. Marcus' exposure to the rain. In these circumstances it was incumbent upon the trial judge to charge the jury on the issue of contributory negligence.

We stated to the jury (pp. 574, 575) Christ's *contentions* as to the decedent's contributory negligence. *Nowhere* did we charge the jury that these contentions were facts. We left entirely to the

---

7. See, also, McSparren, Admx. v. F. W. Woolworth Co. et al., 270 F.Supp. 521 decided March 28, 1967 by Higginbotham, J.

jury the determination of the *facts,* and the determination whether such facts constituted negligence on decedent's part which contributed in any degree to the occurrence and to his death.

We defined the term negligence (p. 562) and referred to the standard of a reasonably prudent man. At the same page, we defined proximate cause, and then related contributory negligence to the "prudent man" standard of negligence as previously set forth. It was unnecessary, we think, to redefine, word for word, the standard which had been defined but a few minutes before. We charged the jury, as well, on the presumption of fact that the decedent was presumed to have exercised due care for his own safety. Our charge, considered as a whole, was fair, correct and adequate in this regard.

Finally, the plaintiff's counsel takes issue with our entire charge, as prejudicial and one-sided. He contends that we failed to relate to the jury two of plaintiff's three contentions; namely, that Christ was negligent (1) in failing properly to inspect and maintain the ditches; and, (2) in failing adequately to barricade the street under the circumstances.

We told the jury (p. 569):

"I do not, of course, propose to review all the evidence; I do not, of course, propose to review each and every contention of each of the parties. To do so might take as much time as the entire trial."

We reviewed (pp. 570, 572) the contentions of the plaintiff as to the liability of the defendants. We said, inter alia, "As I understand, in substance, the major contentions of the plaintiff, they are that under this statute [8] which I have just read, if the road was closed there was a duty properly to *mark the closing at its extremities,* that is at the extremities of that portion of the road which was closed, and to provide a means of passage for the customary users of such road where that was possible, and that the plaintiff contends that here that was possible. * * * " (Emphasis ours.)

We discussed (p. 571) plaintiff's contentions as to Christ's duty to inspect the ditches:

"* * * and by failure to detect the settlement which occurred apparently, according to plaintiff's evidence, on the late evening of December 12, 1959, a condition existed which inspection or more frequent inspection would have detected, and that more frequent inspection should have been made in light of the rainfall. * * * "

In our view these portions of the charge refute the plaintiff's claim in this regard.

The remaining contentions of counsel to the effect that our charge was heavily weighted in favor of the defendants are not supported by the record. The plaintiff complains, that the trial judge's *comments* on the contentions of counsel, and their relative merits, as well as the Court's charge on the issues of negligence, contributory negligence, and the burden of proof, were gravely prejudicial.

At no time did the trial judge express any opinion upon the relative merits of any of the contentions of the parties or upon the probative value of the evidence. We carefully abstained from expressing

8. 53 P.S. § 66110
"Opening, repairing and closing roads
Public roads in townships shall, as soon as may be practicable, be effectually opened and constantly kept in repair. All public roads shall at all seasons be kept reasonably clear of all impediments to easy and convenient traveling at the expense of the township.
The supervisors of any township may temporarily close any township road when, in their opinion, excessive or unusual conditions have rendered such road unfit or unsafe for travel and immediate repair, because of the time of year or other conditions, is impracticable. The road or portion of road so closed shall be properly marked at its extremities and a means of passage for the customary users of such road shall, whenever possible, be provided. * * "

any opinion on all matters submitted to the jury's determination.

We repeatedly told the jury to rely upon its own recollection of the evidence and not to follow any differing recollection of counsel or the trial judge. (pp. 549, 550, 551, 554, 556, 557, 569). Every aspect of recollection, credibility or factual determination was left to the jury.

By way of *illustration* and *illustration only,* we called the jury's attention to a misstatement of evidence, *as we recollected it,* made by plaintiff's counsel in his closing argument to the jury (p. 550). We cautioned the jury, however, to depend on its own recollection of the incident and not ours (p. 551).

Again, *by way of illustration,* we mentioned that Officer Davis, who, for one year after the accident had labored under the mistaken conclusion that the fire truck had been proceeding in a forward direction (westwardly) along Cleveland Avenue, might possibly have been mistaken in other phases of his testimony (p. 556). Again, we reminded the jury that it was their function to resolve any conflicts (p. 556).

█ A trial judge in a federal jury trial may " * * * comment upon the evidence, call [the jury's] attention to parts of it which he thinks important, and express his opinion upon the facts; and the expression of such an opinion, when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error." Vicksburg & Meridian Rd. Co. v. Putnam, 118 U.S. 545, 553, 7 S.Ct. 1, 2, 30 L.Ed. 257 (1886).

In United States v. Philadelphia & Reading R. Rd. Co., 123 U.S. 113, 8 S.Ct. 77, 31 L.Ed. 138 (1887) the trial judge, who was affirmed, commented as follows:

"In other words, while the court does not desire to control your finding, but

submits the question to you, it is of the opinion that you should not, under the circumstances, find for the plaintiff."

█ "It is no longer an open question that a judge of a court of the United States may, in his discretion, express his opinion on the evidence and the *credibility* of the witnesses. The only proviso is that the jury should be made to understand that it is in no way bound by any observations of the court, and that it is the sole judge with respect to the issues of fact." United States v. Stayback, 212 F.2d 313, 319 (3 Cir. 1954) cert. denied 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955). (emphasis ours) It is our considered opinion that not only did we not breach this rule, but that we refrained, as well, from exercising recognized rights of a trial judge.

Plaintiff's counsel excepted, too, to the affirmance and reading of those of Christ's points for charge which were affirmed, on the ground that they were repetitious of matters already covered by the Court's charge. "If there appears to be a tendency to over-emphasis, it must be allocated to the time-consuming practice of presenting arguendo many requests that counsel know are covered by the Court's general charge."[9] Of Christ's 64 points for charge, 49 were refused and not read, and 5 were withdrawn. Of the plaintiff's 24 points we refused 23,[10] because, in almost every instance they ignored the issue of contributory negligence, which the Court of Appeals specifically held should have been submitted to the jury.[11] A fair sample of the tenor of some of plaintiff's points can be gathered from point No. 11: "I charge you as a matter of law that the plaintiff's decedent was not guilty of contributory negligence."

The plaintiff also complains that, while we referred to the defendant's contention of subsidence we made no

---

9. Altrichter v. Shell Oil Co., 161 F.Supp. 46, 51 (D.Minn.1958) aff'd, 263 F.2d 377 (8 Cir. 1959).

10. Point No. 14 was read to the jury.

11. 364 F.2d 96, 99.

mention of the plaintiff's evidence contra this defense. Plaintiff's counsel never directed the Court's attention to this nor did counsel request that we restate to the jury, in substance, plaintiff's evidence in this regard. Moreover, we made but one brief reference to the term in the entire charge (p. 573).[12]

 When a federal trial judge reviews the evidence he is not required to "state his recollection of the evidence with nice exactitude for both sides, yet if such summary is made, it must be fair to both sides to the extent that it is not so one-sided or so warped that it must be regarded as prejudicial to one side in its effect upon the jury." Sperber v. Connecticut Mutual Life Ins. Co., 140 F. 2d 2, 5 (8 Cir. 1944) cert. denied 321 U.S. 798, 64 S.Ct. 939, 88 L.Ed. 1087 (1944).

In our view, fairly judged as a whole, our charge was not prejudicial to the plaintiff. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), relied upon by the plaintiff is inapposite. In *Quercia* the trial judge told the jury:

> " * * * you may have noticed, Mr. Foreman and gentlemen, that he wiped his hands during his testimony. It is rather a curious thing, but that is almost always an indication of lying. Why it should be so we don't know, but that is the fact. I think that every single word that man said, except when he agreed with the Government's testimony, was a lie."

The Supreme Court held, p. 471, 53 S.Ct. p. 700:

> "In the instant case, the trial judge did not analyze the evidence; he added to it, and he based his instruction upon his own addition. * * * He did not review the evidence to assist the jury in reaching the truth, but in a sweeping denunciation repudiated as a lie all that the accused had said in his own behalf which conflicted with the statements of the government's

witnesses. This was error and we cannot doubt it was highly prejudicial."

No fair or honest parallel can be sought to be drawn between the flagrant invasion of the jury's province in *Quercia* and the instant case. The overreaching of plaintiff's counsel in this respect manifests the kind of zeal which, unmindful of counsel's duty to the Court as well as to the client, is satisfied only by binding instructions for his client.

In conclusion, we are not persuaded, upon careful review of the entire charge, and of all the grounds advanced in the motion, that any injustice, unfairness or prejudicial error deprived the plaintiff of a fair and impartial trial of her claim.

Plaintiff's motion for a new trial denied.

---

12. In discussing the plaintiff's contentions we also used the term "subsided" at p. 571.