CATHERINE MCGUIRE v. ROBERT H. McCOLLUM.

(*September* 8, 1955.)

CAREY, J., sitting.

*David B. Coxe, Jr.,* for plaintiff.

*Frank J. Miller* for defendant.

Superior Court for New Castle County, No. 501, Civil Action, 1952.

CAREY, J.:

The question presented here is whether there is any evidence to warrant a jury in finding that the deceased came to his death as the proximate result of negligence of defendant.

The plaintiff is the widow of Charles McGuire, who was killed in an accident on March 14, 1952, on Route 40 south of Wilmington at a point in front of a motel called Maryland Motor Court. This route is a paved dual highway and is the principal road between Wilmington and Baltimore, Maryland. At this particular place, the northbound section is 18 feet and 10 inches wide and is separated from the southbound lane by a grass covered parkway 35 or 40 feet wide. The road here is straight with a slight upward incline, according to the photographs in evidence.

On the night of the accident, defendant was driving northerly at a speed of about 50 miles per hour on his way from Bainbridge, Maryland, to his home in New Jersey. As he drew near the Maryland Motor Court, he passed another car going in the same direction, and stayed in the left lane for the purpose of passing a third automobile. The latter car was about 15 feet ahead of his, and the other one was about 15 feet behind his, according to his version of the facts, when he suddenly saw a person (later identified as Mr. McGuire) about 2 or 3 feet directly in front of his left headlight. He immediately applied his brakes, but struck McGuire, knocking him over upon the grass to the left. Police officers later found glass from defendant's

broken left headlight on the left lane of the road, and testified that the deceased was lying about 16½ feet from this glass in a northwesterly direction and about 15 feet west of the westerly edge of the northbound lane. The deceased never regained consciousness, after he was struck, so far as is known. The Coroner's report shows that he suffered traumatic shock, internal hemorrhage, compound fracture of both legs, fracture of the left arm, a lump on the left side of his head, rupture of the left kidney, and cuts and abrasions in numerous places.

Defendant fixes the time of impact as about 7:00 P.M. The police received a call concerning it at approximately 7:05 and arrived at the scene at 7:10. All agree that the night was dark and clear, and the road was dry but the grass parkway was wet and soft from previous rains. Both police officers stated that traffic at that time was fairly heavy, and cars were using both lanes on both parts of the highway. No eyewitnesses other than defendant have been found.

In addition to the information stated above, defendant further testified in his deposition that his headlights were on "low beam"; that he could see the reflection of lights on the rear of another car from 60 to 80 feet ahead in the right lane, but he could not say whether this reflection came from his own lights or those of the car he was about to pass; that he did not see the deceased until he was about two or three feet from him and does not know which direction deceased came from, nor can he say in which direction deceased was walking or facing, or whether he was walking or standing still; that, in fact, he was not sure the object in front of him was a human being until he stopped the car and ran back; that, upon ascertaining it was a person, he called for help to some people at a service station on the westerly side of the road and ran to the motel on the easterly side and told someone there to call the police; that, at the time of the impact, he was driving in the left lane with his car about equidistant from the center line on his right and the edge of the concrete on his left; that McGuire was on the concrete road two or two and one-half feet from its westerly edge when he first saw

him; that as a result of the impact, his left headlight was broken and hanging by its wire, his left front fender, the mirror on the left side and the left front vent were all damaged, and there was a dent in the hood on the left side near the door.

Such is defendant's version of the accident, as contained in his deposition, supplemented by a few statements of the police. It does not conflict in any material respect from his statement to the police shortly after the accident or his answers to plaintiff's interrogatories. Moreover, there is no other evidence in the record which is in direct conflict with defendant's testimony.

No evidence has been presented showing conclusively just what were the deceased's movements prior to the accident. The two McGuires were returning home from Florida with Mr. and Mrs. Klapp, and stopped for the night at Maryland Motor Court. After unloading their bags, the deceased said he was going out to make a phone call and would bring back a bottle of ginger ale. He then left the room. About ten minutes later, Mrs. McGuire heard someone say there had been an accident and she went out and discovered that her husband had been struck.

Almost directly across the highway from the motel is a filling station, then called Van's Truck Stop. To the south of that filling station is a diner, and to the north is a liquor store. There is no marked cross-walk leading from the motel to any of those places. It is fairly clear that deceased never went to Van's Truck Stop but it is unknown whether he reached the diner or the liquor store. No ginger ale bottle was found by the police, nor did they find any glass resembling pieces of a broken bottle, although it appears that they did not make a thorough search of the area until the following Monday morning. This accident occurred on Friday evening.

The deceased was a retired police officer, 72 years of age, six feet or over in height, and weighing 200 pounds or more. He wore glasses only for reading purposes, although his wife says that he did not have his glasses on when he left the motel room. The police found them hooked to one ear and hanging down

one side of his face. He was wearing a light gray coat and brown pants, according to his wife. The police found a gray hat and a top coat near his body. The evidence indicates that he was not carrying or displaying any kind of light or reflector.

The foregoing statements constitute a summary of the depositions and affidavits of the two parties and the two investigating officers. Neither the police nor the parties have discovered anyone else who has any material knowledge of the affair.

The complaint charges the defendant with negligence in several particulars, and contains a count based upon the theory of *res ipsa loquitur*. The answer denies negligence and proximate cause and charges contributory negligence on the part of the deceased. It is not clear whether the speed limit at this spot was 55 or 35 miles per hour; solely for the purpose of the present motion, defendant admits negligence in driving at the rate of 50 miles per hour in a 35-mile speed zone, but denies that such speed was a proximate cause of the accident.

In a negligence case, the burden rests upon the plaintiff to prove not only that defendant was negligent, but also that the damages were the proximate result of defendant's negligence. *Gray v. Pennsylvania R. Co.*, 3 *W. W. Harr.* 450, 139 *A.* 66. This burden is not satisfied by simply proving that the accident could have been caused by two things, for one of which defendant was responsible and for one of which he was not, when under all the proven circumstances there is no reason to believe that one, rather than the other, probably was the true cause. *Law v. Gallegher*, 9 *W. W. Harr.* 189, 197 *A.* 479; *McElwain v. Myers*, 367 *Pa.* 346, 80 *A.* 2d 859; *Moore v. Esso Standard Oil Co.*, 364 *Pa.* 343, 72 *A.* 2d 117; *Lowden v. Friddle*, *Okl.*, 117 *P.* 2d 533; *Hughes Adm'x v. Shouse*, *Ky.*, 245 *S. W.* 2d 940. Although the drawing of inferences from the proven facts is ordinarily a jury function, those inferences cannot be based upon mere speculation; and where there are no facts reasonably pointing to the probability of one possible inference as against another, the matter cannot be submitted to the jury, for in such event the plain-

tiff does not sustain the burden of proof. Mere possibility of negligence or proximate cause is not enough; there must be probability. *Balducci v. Cutler*, 354 *Pa*. 436, 47 *A*. 2d 643; *Prosser on Torts*, 2d Ed., 222.

■ In the present case, nobody is able to describe deceased's movements prior to the impact. We do not know which direction he came from, how long he had been on the concrete, how long he was within the possible range of defendant's vision, which way he was looking or facing, which way he was moving, or in fact whether he was moving at all. Without some knowledge, or at least some facts justifying an inference as to his movements, it is impossible to evaluate and compare the conduct of the deceased and defendant and thereby to determine whether the death was due to any default of defendant. It is just as probable, upon the present record, that this accident was not defendant's fault as that it was due to some negligence on his part. Any verdict a jury might render in plaintiff's favor would therefore be purely the result of speculation.

The only suggested inference which has any possible merit runs like this: since the police found no ginger ale bottle, either whole or broken, near the scene, deceased must never have reached the opposite side of the road; since he was apparently more severely injured on the left side of his body, he must have been facing toward the west when struck; in view of the foregoing facts, he must have been crossing the northbound lane from east to west; since he was two or two and one-half feet from the westerly edge of the concrete, he must have walked about 16 feet across the easterly part thereof during which time he must have been in a position where defendant saw him, or should have seen him if he had been looking; a jury would therefore be justified in finding defendant guilty of negligence in several respects in addition to the admitted speeding, proximately causing the death. Obviously, several links in this chain of reasoning are by no means necessarily sound. For example, the failure to find a ginger ale bottle does not necessarily mean that the deceased never reached the westerly side of Route 40;

likewise, the nature of his injuries does not necessarily mean that he was facing west when first hit, for his body came into contact with defendant's car in several places, and we cannot know what injuries were caused by his contact with the headlight. Certainly, this line of reasoning is by no means the only possible explanation, nor is it any more probable than several others which would be fully as consistent with the known facts.

Plaintiff's burden of proving proximate cause is not affected or lessened by the rule that the deceased is presumed to have exercised due care for his own safety. *McElwain v. Myers, supra; Moore v. Esso Standard Oil Co., supra; LeBlanc v. Grillo,* 129 *Conn.* 378, 28 *A.* 2d 127; 9B *Blashfield* 510, 607. That presumption would doubtless have a material bearing upon the question of contributory negligence of the deceased, if we should ever get that far in the trial, but that question is never reached until a plaintiff first makes out a case of negligence proximately causing the injury. The burden cannot be shifted simply by relying upon the presumption.

The record contains nothing to justify applying the doctrine of *res ipsa loquitur* to this case. That doctrine does not come into play merely because an automobile caused the death of a pedestrian on a public highway. *Biddle v. Haldas Bros.,* 8 *W. W. Harr.* 210, 190 *A.* 588; *Coulson v. Discerns,* 329 *Ill. App.* 28, 66 *N. E.* 2d 728; *Whalen v. Yellow Cab Co.,* 313 *Pa.* 97, 169 *A.* 97; *DeLaney v. Turner,* 34 *Tenn. App.* 380, 237 *S. W.* 2d 965; 9B *Blashfield* 429; 1 *Shearman & Redfield* (Rev. Ed.) 152. The circumstances of the accident must be considered to determine whether "reasonable people would conclude that the injury would probably not have occurred in the absence of some negligence on the part of the defendant." *Delaware Coach v. Reynolds,* 6 *Terry* 226, 71 *A.* 2d 69, 73. Such is not the situation here.

Plaintiff has cited two cases upholding verdicts for plaintiffs in death cases. They are *Healy v. Moore,* 108 *Vt.* 324, 187 *A.* 679 and *Martin v. Statler,* 370 *Pa.* 293, 88 *A.* 2d 46. They are not in point, because in both of them, eyewitnesses were able to

describe the movements of the defendant and the deceased; there was accordingly evidence upon which a jury could reasonably base a finding of proximate cause without having to guess.

Unless additional facts could be shown at the trial, the Court would be obliged to direct a verdict in defendant's favor. Rarely can issues of negligence and proximate cause be settled on a motion for summary judgment because they are generally questions for the trier of facts. Here, however, all known witnesses have been fully examined and cross-examined; every known fact is in the record; no material contradictions have been pointed out; and no evidence has been developed upon which a jury could reasonably find for the plaintiff. In that situation, it would be a useless burden upon both parties to compel them to go to trial. See 6 *Moore's Federal Practice*, 2d Ed., 2128, 2232. The allegations in the complaint mean little in the face of the facts. Certainly, if all the evidence is insufficient to make out a case for the jury, the complaint cannot supply the deficiency. *Frank C. Sparks Co. v. Huber Baking Co.*, 9 *Terry* 9, 96 *A.* 2d 456; 6 *Moore's Federal Practice*, 2d Ed., 2069. The case of *Colton v. Wade*, 32 *Del. Ch.* 122, 80 *A.* 2d 923, cited by plaintiff, does not hold to the contrary; obviously, that case was before the Court upon the pleadings only and the Chancellor correctly held that he was bound to treat the allegations of the complaint as true.

At oral argument, it was suggested that additional evidence might be discovered prior to trial. This seems highly unlikely since the accident occurred over three and one-half years ago. If judgment should now be entered for the defendant, and further evidence should be later found, the plaintiff might have a possible remedy under Rule 60(b), Rules of Superior Court, *Del. C. Ann.* It is, of course, recognized that some discretion rests with the Court under Rule 56 as to giving a party opportunity to present additional evidence, and where there is a fair prospect of its discovery, entry of judgment could doubtless be postponed for a reasonable period. On the other hand, the motion should not be refused because of a mere hope of dis-

covering some new evidence prior to trial. 6 *Moore's Federal Practice*, 2d Ed., 2129.

For the reasons set forth herein, defendant's motion must be granted.