Dolores A. WAGNER and Luther C. Wagner,
her husband, Plaintiffs below,
Appellants,

v.

Livio OLMEDO and Wilmington Medical
Center, Inc., a Delaware Corporation,
Defendants below, Appellees.

Supreme Court of Delaware.

Submitted March 12, 1976.

Decided Aug. 9, 1976.

Henry J. Ridgely, Dover, and William H. Bennethum, Wilmington, for plaintiffs below, appellants.

William J. Alsentzer, Jr., of Bayard, Brill & Handelman, Wilmington, for defendant below, appellee Livio Olmedo, M. D.

Rodney M. Layton and Jane R. Roth, of Richards, Layton & Finger, Wilmington, for defendant below, appellee Wilmington Medical Center.

Before DUFFY and McNEILLY, Justices, and MARVEL, Vice-Chancellor.

DUFFY, Justice:

■ In this medical malpractice action the Superior Court granted defendants' motion for summary judgment but permitted reargument on one aspect of the causal relationship between the alleged negligence and the permanent injury for which damages are sought. Since the appeal was taken before the Court heard reargument, there is uncertainty about the finality of the ruling to be reargued; but the alleged injury was sustained some five years ago and we therefore deem it desirable to pass over any procedural irregularity and consider the merits of the appeal on the bases argued.

I

On December 16, 1970 Dr. Livio Olmedo performed on Mrs. Dolores Wagner at the Wilmington Medical Center an operation known as a trigeminal rhizotomy to relieve severe pain, of the *tic douloureux* type, which she had been experiencing on the left side of her face. The complaint is based entirely on alleged post-operative negligence which, plaintiffs contend, resulted in permanent impairment of the vision in Mrs. Wagner's left eye. Defendants deny any responsibility for such damage.

The record made by the parties includes a full development of the medical concerns and technology pertinent to post-operative care after a trigeminal rhizotomy. But in this opinion we discuss that record only to the extent necessary to a review of the rulings made by the Trial Court. Plaintiffs make a number of contentions as to negligence and we now consider each of them.

II

■ First, plaintiffs contend that Dr. Olmedo was negligent because he failed to warn Mrs. Wagner of possible permanent injury to her eye following the operation. Relying on *DiFilippo v. Preston*, Del., 3 Storey 539, 173 A.2d 333 (1961), the Trial Judge found for defendant on this issue and we think he was right. Fairly read, the Spiegleman affidavits show a practice to warn of "corneal inflammation," which is "common" following an operation of the kind here performed, but there is no such showing as to scarring of the cornea. Indeed, the Weiner affidavit shows that it is *not* the practice to warn of risk of perma-

nent injury to the cornea of the eye. As we read the record, the latter affidavit is undisputed by anything said by Dr. Olmedo.

Plaintiffs' arguments based on the absence of informed consent by Mrs. Wagner are a logical corollary to the duty-to-warn arguments and they fail, as the Trial Judge concluded, for the same reasons.

### III

■ Next, plaintiffs say that Dr. Olmedo is liable to them on a breach of warranty basis. They say that he had a contractual duty to treat Mrs. Wagner in accordance with a standard of care but which is neither specified nor supported by authority. We agree with the Trial Court that this hypothesis is also without merit. Compare *Coleman v. Garrison*, Del., 349 A.2d 8 (1975).

### IV

■ Plaintiffs argue also that they are entitled to rely on the doctrine of *res ipsa loquitur* but we agree with the Trial Judge that they may not do so, largely for the reasons stated in his opinion. *DiFilippo v. Preston*, supra. We add, however, that the record shows the possibility of permanent scarring for reasons unrelated to the separate charges of negligence made against the respective defendants. For this reason, *res ipsa* clearly does not apply.

### V

■ Finally, we consider specific charges of negligence which plaintiffs say are sufficiently supported to permit them to resist the motion for summary judgment *vis-a-vis* each defendant. In viewing the record plaintiffs are, of course, entitled at this moment in the lawsuit to the benefit of any inferences. *Hurtt v. Goleburn*, Del., 330 A.2d 134 (1974).

### (A)

■ First, as to the Medical Center, for purposes of the motion (and for that only), it concedes negligence by its personnel in failing to provide the eye ointment which Dr. Olmedo had ordered. On deposition Dr. Olmedo testified that "dryness of the cornea also could result in inflammation of the same"; he had seen many inflammations of the cornea but never an ulceration. It is undisputed that Mrs. Wagner had an inflammation of the cornea on December 22, 1970 and that sometime later she had an ulceration of the cornea which resulted in permanent impairment of her vision in the left eye.

The central question is when and why ulceration occurred. As we read the record, it could have occurred after the Hospital failed to apply ointment while Mrs. Wagner was confined there before her discharge on December 23. And, of course, it could have occurred after her discharge as the Medical Center argues.

But, for present purposes, the critical fact is that Dr. William F. Rath, an ophthalmologist to whom Mrs. Wagner was referred by Dr. Olmedo, saw her on December 23, 1970 (the day she left the Hospital) and, as to that, he has written:

"I first saw Mrs. Wagner on 12–23–70 when she came to my office at the request of Dr. Olmedo regarding her left eye which she stated had been inflamed since the previous evening. She had been operated for a tic douloureux. When I saw her she showed evidence of corneal epithelial break-down with ulceration of the cornea. We felt that a temporary tarsorrophy would be in order to protect this cornea, since it did have loss of sensation.

A temporary tarsorrophy was performed and I felt, after seeing this patient on several occasions, that a permanent tarsorrophy would be indicated. This was done and because of the per-

sistence of the lack of sensation in the cornea, this tarsorrophy was maintained with improvement in the corneal epithelium and healing of the corneal ulcer." [1]

It may be argued that on deposition Dr. Rath's explanation of his letter suggests that the "ulceration" he observed when he first saw Mrs. Wagner did not result in the permanent injury alleged, but any uncertainty must be resolved in plaintiff's favor. Dr. Olmedo observed what he called a "clear-cut ulceration" on January 7.

We note also that one inference from Dr. Weiner's affidavit is that inflammation of the cornea may, without more, advance to the cornea covering known as Bowman's Membrane which may result in scarring. He stated:

"If, upon referral by the operating physician to an Ophthalmologist of a patient who has developed inflammation of the cornea of the eye following the performance of a trigeminal rhizotomy, the inflammation has not advanced beyond the epithelium or outer covering of the cornea to the layer of the cornea below the epithelium being Bowman's Membrane, then usually progression of the inflammation can be arrested so as to prevent any permanent injury to the cornea. This is because there will be no scar injury to the cornea if the inflammation does not proceed beyond the epithelium to Bowman's Membrane."

As we have already observed, Dr. Olmedo testified that dryness may cause inflammation. And certainly one construction of Dr. Weiner's affidavit is that inflammation may advance to Bowman's Membrane which may result in scar tissue.

We are satisfied that, given the inferences to which plaintiffs are entitled, we cannot say on this complex record that on unquestioned facts the Center is entitled to' judgment as a matter of law. In short, there is enough to put the cause of Mrs. Wagner's permanent eye injury to a jury.

(B)

■ Second, as to the claim against Dr. Olmedo, we reach the same conclusion. According to the Spiegleman affidavit:

"The proper standard of care and competence of any surgeon who performs trigeminal rhizotomy and discovers corneal inflammation in the medical community surrounding Wilmington, Delaware and in similar communities throughout the United States is that the affected eye be immediately patched and the patient referred to the care of an Ophthalmologist within a twelve-hour period. If this is not followed then there is a reasonable medical probability of permanent corneal scarring and visual loss."

Mrs. Wagner testified that Dr. Olmedo visited her on the evening of December 22 (which is disputed) and that he "seemed quite upset when he saw" that her eye was red.[2] According to plaintiff's evidence, she did not see a specialist within a twelve-hour period after inflammation appeared nor was her eye immediately patched, as Dr. Spiegleman said should be done.

Given Dr. Rath's testimony as to ulceration and the standard of care described by Dr. Spiegleman, we conclude that there is a jury issue as to causation.

---

1. A tarsorrhaphy is a procedure in which an eyelid is stitched in the closed position.

2. The Doctor's Order Sheet tends to confirm the date; it reads in part:
   "12/22 1. Discharge tomorrow a. m. Discontinue eye patchings

2. To wear pair of glasses with temporal shields protection all the time

3. Remind her to go Dr. Olmedo's office tomorrow morning after leaving hospital for new pair of glasses with protection (my secretary will take her to the optician at the Professional Building for this purpose)"

In permitting reargument the Trial Judge said:

"With respect to causal connections between the condition observed on December 22 and plaintiff's permanent condition, plaintiff has pointed to an interrogatory answer by Dr. Olmedo which plaintiff says shows causal relationship. Recognizing that in a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-moving party, the Court concludes that one interpretation of that answer is that in his opinion plaintiff's permanent condition was caused by removal of the eye patch upon Dr. Olmedo's order."

It seems clear that such a finding provides an additional reason why this case is not appropriate for summary judgment.

Remanded for proceedings consistent herewith.

McNEILLY, Justice (dissenting):

I agree with the conclusions of the majority on all issues except causation. I further agree with the principles enunciated by the majority on that issue. But the conclusion that there is a jury issue as to causation cannot pass muster on the evidence in this record which establishes nothing more than a mere possibility that defendants' alleged negligence proximately caused Mrs. Wagner's permanent vision impairment.*

It is fundamental that in a negligence action

"a plaintiff may not recover when he shows nothing more than mere possibility of causal connection between alleged wrongdoing and an injury; something more is required . . ." *Phillips*

*v. Delaware Power & Light Company*, Del., 216 A.2d 281 (1966)

A finding of causation may not be based on speculation or conjecture; and where, as here, a layman could not be expected to appreciate or have knowledge of the medical arts, expert medical testimony is required to establish plaintiffs' case. *DiFillipo v. Preston*, Del.Supr., 173 A.2d 333 (1961).

"The Courts are agreed that proof of causation must go beyond a showing of a possibility that injuries arose from the defendant's negligence or lack of skill, since the jury will not be permitted to speculate as to the causes of the injury." 13 ALR 2d, *Proximate cause in malpractice actions*, 11, 22.

It is established in Delaware that proximate cause cannot be based on mere speculation:

"Although the drawing of inferences from the proven facts is ordinarily a jury function, those inferences cannot be based on mere speculation; and where there are no facts reasonably pointing to the probability of one possible inference as against another, the matter cannot be submitted to the jury, for in such event the plaintiff does not sustain the burden of proof. Mere possibility of negligence or proximate cause is not enough; there must be probability." *McGuire v. McCollum*, 10 Terry 359, 116 A.2d 897, 900 (Del.Super., 1955).

The record supports the *possibility* that defendants' alleged negligence could have been a cause, that Dr. Rath's treatment, or lack of treatment could have been a cause; that the condition could have been caused by an eyelash or other foreign substance, by Mrs. Wagner unconsciously rubbing her

---

* It must be noted that summary judgment was granted below "insofar as plaintiff is claiming damages for permanent injury to her eye." Thus, on this appeal, we are not concerned with whether or not any of the alleged negligent acts resulted in the initial condition, except insofar as such condition may be related to the subsequent permanent corneal scarring first observed by Dr. Rath some 10 months after Mrs. Wagner was released from the hospital and placed in Dr. Rath's care.

insensate eye, by throphic changes from the persistent lack of sensation, without anyone's fault or as a result of medical treatment for a neuralgia condition by other physicians (undisclosed at the time) who gave Mrs. Wagner pain injections, by premature removal of the original tarsorrhaphy, or from an entirely new area of breakdown occurring in the exposed area left by the single stitch tarsorrhaphy, or by other possible causes suggested in the record too numerous to recount. Suffice it to say that defendants are not insurers of the success of their treatment and can only be held liable where a reasonable medical probability demonstrates that their failure to conform to acceptable standards of care resulted in the injury complained of—here, permanent vision impairment. Because of the numerous *possible* causes of the injury and the utter lack of any evidence of the *probable* cause, the inference of negligence and a jury issue is unwarranted in this case. Before the doctrine can be applied, responsible causes other than the defendants' negligence, including conduct of the plaintiff and third parties, must be sufficiently eliminated by the evidence. Restatement Torts 2d § 328D (1) (b).

The majority's reliance on bits of evidence taken out of context, which largely are unrelated to the history or facts of this case, or otherwise neutralized in the full text of the evidence from which the inferences were drawn, is misplaced and within the realm of speculation.

In my opinion the judgment of the Superior Court should have been affirmed.